taking time but Okay. Let's pass this approach problem, please. Good morning, your Honors. Jonathan Yeasting, Nova State Appellate Defender, on behalf of Mr. Martin. Good morning, your Honors. My name is John Nowak. I'm the Assistant State Secretary here on behalf of the people. Okay. Number one, the mic doesn't amplify, so please keep your voices up loudly and clearly. Fifteen minutes apiece. Yes, and we're about. Just a couple of minutes. Okay. May it please the Court. Jonathan Yeasting, on behalf of Mr. Martin. Decades old convictions for non-violent. We can't hear you. You're just going to have to. I'm sorry, Justice Lankford. It's a little big room and there's no mic, so just pretend. We have the air conditioning on. Stay right here. Exactly, and I want to hear you, sir. Thank you, your Honor. Well, Mr. Martin's decades old convictions don't mean that he ceased to be one of the people best protected by the Bill of Rights today. What if his conviction was only ten years old? Would that make a difference? Well, your Honor, we can look at how. Or thirty years old. Does it make a difference? Frankly, your Honor, I'd say this isn't a case where you have to pull out the chains to measure to know if the line's been crossed. We have all sorts of measures across criminal law to say, well, this conviction is too old to have meaning today in Montgomery. For evidentiary purposes, we'd say a defendant's trustworthy enough that we don't use a conviction for impeachment if it's been more than ten years. The Floyd Card Act says even for forcible felonies, if they've been twenty years old, they no longer would provide a barrier to getting a Floyd card. Here we have non-forcible felonies that occurred when Mr. Martin was an adolescent, and for which he was out of prison for more than twenty years before he was eventually found with a revolt on the street. So they weren't as applied because they were non-violent felonies? Well, your Honor, we're raising an as-applied challenge. Has the State met its burden to prove that Mr. Martin is still the kind of person that is too dangerous to trust with a firearm? And one factor that the case law looks at is their age of those felonies. And it's something that intuition supports as well. Especially for juvenile offenses, somebody's acts as a teenager might no longer show their propensity to be especially dangerous twenty years later. Now, if these were violent felonies, felonies that have forces now in Mr. Martin's background, maybe we'd have a different case. But they're non-violent felonies. They're mere non-prohibitum. They're creatures of statute and not the kind of common law offenses for which people were disabled early in American history. Should we consider the fact that he violated his probation and then had to serve his sentence in the IDLC? Well, we have to consider all the facts about his record that come up in sentencing and elsewhere, your Honor. However, the fact that he violated his probation when he was still an adolescent shows very little about his character to be able to possess a weapon today. If he had violated his probation five years ago, perhaps it would be determinative. But for people similarly situated to Mr. Martin, people who had mere statutory non-violent convictions more than two decades ago, the state would have to meet its burden to show that these people still weren't being disarmed. And the state's briefs do so little to meet its burden. Now, this is one of these... Can I back up? How do we get to these questions that you're posing? Isn't there a couple of steps that we need to take? Yeah, there's a few steps, and it's been shifting over the course of the briefing here, largely because of the Illinois Supreme Court's decision in Sharos. So, for a long time, what we typically did in Illinois in these cases was, step one of this sort of analysis is the conduct within the right to bear arms. Step two of the analysis would ask, when can the state meet intermediate scrutiny? Now, in Sharos... What Sharos directs us to do, and this is consistent with the Seventh Circuit precedents, consistent with that Hatfield case, is say, well, when the prohibition that's at issue is in one of those presumptively lawful prohibitions that Heller spoke of, we go straight into step two kind of analysis. It has to be subject to intermediate scrutiny, as the Williams case said, and in an as-plied challenge like this, the state has to be put through its paces. So in Sharos, where it was a prohibition on carrying a thousand feet from a park, the court said, well, the parties are debating whether it's a sensitive place, but that debate is beside the point, because even if it's a sensitive place, and that's a presumptively lawful regulation, the state still has to meet its burden under intermediate scrutiny, and in that case, the state couldn't meet its burden. Now, we have so little here from the state that that even tries to meet that burden under intermediate scrutiny. Okay. Let me go back to the first step. Now, you're bringing both a Federal and a State Second Amendment. It's what went on in the Federal Second Amendment challenge, Your Honor. We did mention both. It mentions both. As far as we know, there isn't any independent force to the State Bill of Rights on this that would go beyond what the Federal Second Amendment does. We don't have clarification as yet from the Supreme Court as to how much we lockstep these things, but the assumption is lockstep. So in response to Justice Rosha's question, the main thrust of your contention is based on the Federal. It's based on the Federal claim, Your Honor, and the Federal claim is what was the basis of the Aguilar decision, it's what was the basis of the Sharos decision, because this is one where the Federal courts got ahead of the Illinois courts. Okay, but then there might be a little discrepancy between how the State courts have looked at the first, what I'll call your first stage, as opposed to the Federal court looking at that first stage. Yeah. So how do we reconcile that in this case? Well, the decision has to be made by what Sharos did. It's the most recent Illinois Supreme Court decision instructing lower courts on what to do. But if Sharos didn't address whether or not in the first stage, in these particular cases, whether or not, what class are we talking about? Are we talking about the class of all people having the right to carry arms, or is there subsets? You are trying to create a subset of nonviolent felons. So in the first stage, Hatfield seems to be okay with carving out and saying, you know, one thing, while our State courts might be saying, no, felons just don't have that protective right. They're not within the core of the second event. Well, here's what I'd suggest Sharos did. Sharos quoted a link from the Seventh Circuit's Williams decision, which was an as-applied felon possession challenge. It was just as applied to a recent robbery. And in that decision, the Seventh Circuit said, even for these felon possession cases, we have to put the State through its paces to test under intermediate scrutiny. Sure, but I'm talking about how they then analyzed the first step. Williams skipped to the second stage, correct? Williams skipped to the second step. The way Sharos talks about it is, if it's presumptively lawful regulation, it's still subject to intermediate scrutiny. And there's a lot of support, even if this court says, okay, let's go do a full first-step analysis, despite Sharos. There's plenty of support for the notion that nonviolent-erred felonies are not the kind of thing that eliminates somebody from the Bill of Rights. We see this in what Hatfield's discussion of nonviolent felonies is, where it says, well, let's look at what kind of felonies were around that might have disarmed somebody at the relevant time in 1791. And that turns out to be a very narrow list of common-law felonies that are broadly typified by horrible violent conduct, murder, rape, et cetera. And it's not these later statutory creations, such as possessing a firearm with a record or possessing contraband. But are state courts common in that way? Well, the state courts are split, Your Honor. I think the original Davis decision from, I believe it's 2011, from this court was correct to say, well, we have to go on and evaluate under intermediate scrutiny. It's just in an as-applied challenge like this, intermediate scrutiny favors the defendant as opposed to a facial one. Whereas some other decisions of this court have taken the position that I don't think can be reconciled with Sharos, that any felony conviction, any time on your record, even if you're a teenager, even if it's a minor felony, effectively means that you're dead for purposes of the Bill of Rights. Now, even if we do this first step, though, both Sharos and the Seventh Circuit's precedents say, well, if it's inconclusive as to what the history is, then we have to go on subjected to intermediate scrutiny. And what we're not seeing in this case is, you know, any historical evidence or really any meaningful development of the historical evidence from the state that would say, well, people in 1791 that were convicted of analogous felonies were effectively, you know, subject to a tender and barred from possessing rights. You know what they say, the state's responsibility is because you didn't bring it up enough. All right, and that gets us back to how do we do an as-applied evaluation of this case when there was no record developed in the trial? Well, we do have lots of record development as to Mr. Martin's specific situations. We have the court, you know, making its finding that the statute is a misfit for him because he's in fact not a habitual criminal. We have the court imposing a minimum sentence, detailing his entire history. And even the state here is really relying on the bare fact of convictions, which was its own evidence that was presented at trial. And it relies on such a narrow suite of facts to make its argument. When it puts all its eggs in the baskets of all felons should be disabled that have this on their record, then we don't need that much of additional record. Now, because the state would bear the burden of both these steps, you know, if this court, you know, felt that more record was due to be developed as to the history because of the intervening charge decision, the state should be asking for this court to remand under 615. However, it doesn't matter because we have lots of case law that's been developed where there's findings. Why would the state ask for a remand when their argument is that you just, you didn't take that necessary step below? So they would be giving you something that they think you've forfeited. Well, Your Honor, at least as to the record development as to the history, the record development as to the history, none of us are great historians, and we already have all sorts of developed findings that the state largely isn't contesting from the scholars, from decisions like that lengthy discussion back and forth in the Binderup decision, from the Hatfield decision, from the Williams decision as to what history tells us. Where we already have other courts in more detail making findings as to the specific nature of history, there's really no need for any other factual development about that. If we were having some kind of detailed fight about what the meaning of the Pennsylvania statute in 1790 was, maybe we would need a remand, but that fight's now passed. And, Your Honor, once we get to intermediate scrutiny, we have to look at the age of these offenses. This is classic overcharging when the state tries to bring a Class X offense for mere possession of a handgun in Chicago based solely on acts that were committed as an adolescent. In fact, the drug charge that the state brought in wouldn't even be charged as an adult felony today. That tells you something about how the legislature thinks as to, you know, the potential dangerousness of somebody that has that on their record. They just don't think they're that dangerous. It's just that they wrote a sloppy statute, and when they write an overbroad statute, there's going to be cases like this that come up where the statute shouldn't be applied. And, moreover, we have all this underbutted evidence of Mr. Martin's rehabilitation. The state went beyond its normal practice at sentencing here, didn't even ask for a maximum sentence. The court quickly, with all the evidence and mitigation of the record, the court quickly gave him what the minimum term was. How about the State's McFadden argument that the defendant possessed a gun knowing that the two felonies were out there and didn't take steps that some of these other litigants did to determine whether the statute would be unconstitutional? Your Honor, there's absolutely no support for the proposition that a defendant has to sue first before his constitutional rights get violated. The subsequent content of the Bill of Rights does not depend on who gets to the courtroom first. In fact, a lot of our constitutional jurisprudence has been made from defendants exactly in Eric Martin's position that have raised an as-applied challenge on conviction to a statute. There's major historical cases that were that posture, like Lawrence v. Texas and Eisenstaff v. Baird, and I believe the brief cites several recent cases that were in a similar posture from the Illinois Supreme Court. Isn't that some of the cases that you've cited in your brief? Isn't that exactly what happened in other jurisdictions? In several of the cases, we have a defendant suing first. In several of the cases, in some of the other cases, we have an as-applied, you know, like the Williams case, for example, was an as-applied challenge on a conviction. You know, Mr. Aguilar didn't sue first to his gun convictions, yet the Illinois Supreme Court vacated. Mr. Chavez didn't sue first. In fact, he pled guilty to possession within 1,000 feet of a park and later raised on a post-conviction. There's no support at all for the notion that in order to be able to exercise one's constitutional rights, one has to go to a court first. That would create a two-tier system of jurisprudence where only the wealthy and sophisticated, you know, Americans would be able to invoke constitutional rights. The very existence of an appeal in this Court is what refutes that. Now, one unusual factor that your question also stumbles on is there's no judicial bypass available for the non-cabitual criminal statute. Even if, you know, The federal statute does have provisions. Yeah. The unlawful, the usual, the basic unlawful use for weapons and unlawful possession by a felon lets somebody have an exception if they can go through the ISP process and get a Floyd card. But there's no exception like that for a non-cabitual criminal. That there's just no judicial bypass at all. And, you know, and of course, Mr. Martin is not a non-femic fat and he was claiming his right to possess the gun while he had been using the gun in a spree of armed robberies. To the contrary, Mr. Martin has no violent offense at all on this record. Your Honors, for the reasons argued today and in our briefs, we ask that you vacate Mr. Martin's conviction. Thank you. Thank you. I have to say I've been looking forward to these arguments. I knew they were going to be wonderful. I know New Year's is going to be wonderful. I know New Year's is going to be wonderful. I've been looking forward to it, Your Honor. May it please the court. May it please the court. Again, my name is John Nowak. I'm an assistant state's attorney on behalf of the people. This defendant chose to arm himself despite knowing that he had been convicted of felonies in four previous cases, two of which, not including the one he's talking about, about how that minor drug offense is first one, two of which were so serious that they qualify as one of the specifically enumerated felonies to qualify him as an armed habitual criminal. Now, this defendant's as-applied challenge fails both procedurally and substantively in McFadden's layer. Procedurally, and it's telling, the defendant didn't address this in his brief, and he did not address it before this court until prompted repeatedly by this court to address the procedural bar that he absolutely cannot pass, and that is that with an as-applied challenge, you cannot make that for the first time on direct appeal. This is established law in Illinois and federally. McFadden is one of the most recent cases talked about, but then several litany of cases. McFadden said, quote, it is improper for this court to render a decision on an as-applied challenge where there has been no evidentiary hearing and no findings of fact on that issue. Citing Mosley, which is an Illinois Supreme Court case in 2015, Mosley interred a block quote from a civil case from Illinois Supreme Court in 2009, and that case cited a 1993 U.S. Supreme Court case, Reno v. Flores. This is well established. And the reason why is this case is a great example of why this court absolutely cannot grant ruling in his favor because he's barred procedurally by this. The record here below was focused on proving the elements of on-judicial criminal beyond a reasonable doubt, and sentencing was what the perfect sentence would be. There is potentially so much more evidence, both for the defendant's as-applied challenge and against it on behalf of the state, that would be relevant to whether this is unconstitutional as applied to him. The defendant chides the state repeatedly in his reply brief, and again here in oral argument, about how the state hasn't come up with any reason to show that he is currently unfit. The reason for this, of course, Your Honor, is the state is ethically limiting itself to the four corners of the record on direct appeal. The record on direct appeal was focused on proving the elements. For instance, in his brief, he says, Warren Martin, the kind of person whose violent proclivities should erratically bar him from possessing firearms, the state should have been able to find some demonstration of that fact in those two decades. Facts that would show that have no relevancy to whether he possessed a gun on that date in 2013, and whether he had two qualifying felonies. Anything related to his current level of potential violence, not relevant to that. Were they relevant to sentencing? That would be only to how severe the sentence would be, Your Honors, and again, it wasn't focused on whether this would be as constitutional as applied to him, but potentially include a lot more evidence before and against him on this point. And as a multiple time felon, again, McFadden speaks to this directly. McFadden had to do with an unlawful use of a weapon by a felon, and his one prior felony in McFadden was the unconstitutional form of aggravated unlawful use of a weapon. The bulk of it was whether it was proved to be unreasonable doubt, but he added McFadden an as-applied claim, saying, look, this is unconstitutional as applied to me because my felony isn't simply just old. It wasn't old in that case, but it was void. It was as if it never existed. And the Supreme Court rejected that out of hand and said, no, this is improper. You have not raised that below. There's been no evidentiary findings of fact on that point. Here, defendant, both in his reply brief and in an argument, talks about how it's not fair to him to expect him to go to court first, which, of course, is what McFadden, the whole thing, protects. You have to go get judicial authorization for this first. But that's not his only remedy here. First, before he did possess the gun, he should have, according to McFadden, gone to court and got authorization for this. He could have first made an application for and received a firearm owner's identification card. We don't know if he applied for it because, again, there was no as-applied hearing here. We don't know. But we do know that he was never issued one because that did come out of trial, that he had not been issued a foreign gun. So that's that. So this whole point about how there's no exception in the individual criminal statute for those that have a foreign card, it doesn't matter. He didn't get one. Did he apply for one? Who knows? We don't know. He could have then done what the plaintiffs, and, again, these are all plaintiffs. Every case that he puts the most reliance on, bind or wrap out of the Third Circuit, the two cases from North Carolina, and, most certainly, this Hadfield case, decided for a motion to set additional authority, those are all where people have been convicted of felonies who went to court first to seek judicial authorization to possess a firearm because they knew they had been convicted of felonies, knew that they could not possess weapons. They needed to go to court first. But weren't they following the procedures in the federal statute? The thing is with, and Hadfield makes this point nicely, is that under the federal firearm bar, Section 922, it's equivalent in many ways to our unlawful use of a weapon by a felon. There is no exception for getting a firearm under identification card or something of that nature. But there is no statutory mechanism for those that have been convicted of a crime or count as a felony to get a licensing permit. And so that the only way federally would be to file a declaratory motion in advance. And so that's why the court, and Hadfield explains that fairly nicely. So we could have done all that. Every case he talks about, all those plaintiffs, they all went to do their as-applied challenge first. And, again, that comports with McFadden in the line of cases that you raise this before the circuit court first. That way, the circuit court can hold an evidentiary hearing on that issue. We can find out facts both for and against the defendant, as to whether it's currently violent and whether this is unconstitutional or applied to him. This court would then have the benefit of that hearing, would have the benefit of the circuit court's findings of fact. But we don't have that here. Okay, so the defendant says that's not fair. We can't expect him to go through these procedural loops and do something before, even though McFadden requires it. Okay. Then at trial, he's been charged with on-divisional criminal. He could have raised an as-applied challenge to the on-divisional criminal statute before the circuit court. He did raise a facial challenge under Aguilar to one of the AAU counts. He did not raise, he could have raised at that time, an as-applied challenge. Then there would have been an evidentiary hearing. There would have been findings of fact. This court would be procedurally able to rule on the merits, on the substance. He did not do that either. What's left for defendants? He could potentially raise this in a post-conviction petition. Certainly, it is not the state at this point to ask this court to remand, to make up for the procedural mistakes the defendant's counsel has made. If defendant, that's what the Post-Conviction Hearing Act is for. It is to address constitutional issues that require evidence that are outside the record on direct penal, which sounds familiar to what's going on in this case. So that's procedurally. This case, this court may not grant him relief as an as-applied challenge. He is procedurally barred from doing it. McFadden makes that clear. But turning to the substance, because McFadden makes it clear that while it's improper to grant an as-applied challenge if it's raised for the first time on a direct appeal, it is okay and acceptable for the court to deny it on the merits without such a hearing. And that's where this Chavez framework comes in when we get to the substance. Again, defendant can't pass that procedural bar. But to get to the substance of it, this court may analyze it under Chavez to deny his claim on the merits, because his claim substantively on the merits is invalid. Chavez set forth a framework, a new framework, about how to address even presumptively lawful bars on firearm possession. Chavez was issued the day after we filed our brief in this case. It doesn't affect this case substantively either, other than the framework that this court would apply. There had a two-step analysis that even though something is presumptively lawful, one of those Heller's presumptively lawful categories, that even there you get to step two. And then on a sliding scale of the intermediate scrutiny, there would be on the most stringent part of the intermediate scrutiny level would be what happened in the facial challenge in Chavez, which was a firearm restriction that applied even to all citizens, including law-abiding citizens, and restricted where in the city they could possess a gun. So that was on the most stringent end of the sliding scale of the intermediate scrutiny of Chavez. But Chavez says that on the most lenient part of that sliding scale are presumptively lawful bars such as felons. So this is on the most lenient side of that sliding scale that Shah has set forth. And if the felons possessing weapons is on the most lenient end of that spectrum, the armed habitual criminal statute is even more lenient than that because we're not talking about a person who has convicted a single felony regardless of seriousness for this case. The armed habitual criminal act requires two specific prior felons of a certain level of seriousness. For instance, he was convicted, the basis of his conviction here of armed habitual criminal was unlawful use of a weapon by a felon, which was a class three, and manufacturing and delivering a controlled substance, which at the stipulation of trial was noted as a class three. The IDOC website lists it, I believe, as a class two. But regardless, it's at least a class three. Both are class threes. These are not even the least serious felonies. These are a third of the classes of four. So this is entitled to the least amount of intermediate scrutiny there is. Here, speaking to the substance and looking to binder up, binder up was a lengthy opinion, a split opinion, where the third circuit sitting on bonk found that the felon firearm statute was unconstitutional as applied to these particular defendants in that case. And those defendants had been convicted of what the state, the state in those cases had considered misdemeanors, and they hadn't received any prison time, I don't believe. They had just been for supervision. But they could have received prison time up to five years. But they were minor, and the state had characterized them as misdemeanors. And the binder up majority, and part of the majority opinion, so that even if it was possible to read Heller as leaving open the possibility, the remote possibility of a successful as-applied challenge to a person convicted of an offense characterized by the state as a felony, quote, the individual's burden would be extraordinarily high and perhaps even insurmountable, end quote. That's on page 353, footnote six of the majority. That's part of the majority opinion. And then binder up none to expressly overrule a case that defendant relied on in his opening brief, which was this Barton case also out of Third Circuit. And this comes from the plurality, but coupled with the dissent, because the dissenting justices would not have granted an as-applied challenge at all because these defendants had been convicted of what amounted to felonies. So it's clear that the Third Circuit held, rejecting Barton, that they rejected the argument that people convicted of serious crimes may be dying their Second Amendment rights after just not posing a threat for a period of time. They said the fact that the mere passage of time alone would never be enough to sustain an as-applied challenge. Well, if we go back to binder up just for one second, because their argument is that in binder up we had nonviolent offenses and that the defendant here committed nonviolent offenses, therefore binder up should be applicable to this case. Again, putting aside the procedural bar which can't pass, getting to the substance of that. These are serious felonies. The fact that these, the particular unlawful use of weapon by a felon and manufacturing and delivery of a controlled substance worn around in 1793 is not relevant to this case. It was, in binder up there, the offenses that they'd been convicted of were minor. That's why they've been characterized by the state as misdemeanors. We don't, this court doesn't need to go down that rabbit hole, obviously because procedurally it's barred, but even substantively, because the state of Illinois has characterized these not as misdemeanors, not even as class four felonies, these predicate offenses, but as class threes, and not simply being convicted of one class three, but convicted of two specific ones qualifies as an armed habitual criminal. So there's no reason for this court to go down and look through and sort through what was originally a felony back in 1793. No court in Illinois has done that. That's why they don't want us to do that. And there's no reason for this court to go down that one in this particular case. This is not a defendant like the plaintiff at Hatfield, where Hatfield had been convicted 30 years earlier of committing, making a false statement on a federal pension form for the railroads 30 years before, and had never received any prison time, no jail time, and had never done anything wrong. And again, how did the court know that defendant Hatfield, plaintiff Hatfield hadn't done anything wrong? Because it was the district court that was making that opinion. There was a suit and evidentiary finance in that case, which then gets us back to the as-applied law in this case. A couple of final points. Defendant referred to the armed habitual criminal statute as a, quote, sloppy statute here in argument. It's not sloppy. It is specific. There are specific felonies that qualify, and ones that aren't listed don't. You cannot be an armed habitual criminal for committing a couple of Class IV felonies that aren't part of that list. You're not an armed habitual criminal. It is not sloppy. It is specific. And the fact that there's no FOIA card exemption for armed habitual criminal, and the fact there is one for unlawful use of a weapon, isn't relevant to the supplies of this defendant, because we know from the record that he never was issued a FOIA card. And one last point as far as the defendant talking about raising this for the first time on direct appeal. He talks about Aguilar as one case where that happened, and Chavez where that happened. The reason why that was okay in those cases was because those were facial challenges. They were not as-applied challenges. And the structure procedurally is different for as-applied. You've got to raise it before the circuit court. Let the court have an evidentiary hearing. Make factual findings. So this court will be in a position to rule on that judge. So for these reasons, and those are our brief surroundings, we ask that this court affirm defendant's conviction. Thank you. Wait, hold on. Why don't you lift it up? Mike. As adjudicated, as-applied challenges raised for the first time on appeal in Hartrick v. Davidson, which is a constitutional challenge to a forfeiture provision. In the McElwain case, which was a Fourth Amendment challenge to summary suspension. In the Gray case, which is kind of like this one, because that was a due process challenge to a long-past domestic relationship. When the record is adequate and the record is adequate here, the court has to go ahead and adjudicate the merits of the claim. Now, it seems that we have different definitions of what a minor offense is. He's emphasizing well in Bindra that these were minor offenses. The offenses at issue in Bindra look a lot like those in this case, where one of the Bindra plaintiffs was convicted of possession of a handgun without a license, which would be the equivalent of Illinois' possession without a Floyd statute. The other one was convicted of corrupting a minor based on what one would normally call a statutory rape circumstance that would be chargeable as a criminal sexual abuse in Illinois. These are not the kind of offenses that, you know, that are merely lying on a railroad at railroad employment form. These are in fact felonies. That's why one of them was punishable for up to five years in prison, which is not that different than the kind of sentencing range that we saw for the convictions that Mr. Martin had when he was a teenager. Now, Your Honors, we're all trying to figure out exactly what this means after Heller. How do we define who's within the Bill of Rights? Charles gives a pretty strong indication that the state has to bear the burden of these circumstances to say in the individual case, yes, you are too dangerous to be able to still trust with a weapon decades later. Now, for all his emphasis on we need to go have a hearing, we need to have a hearing first, I still haven't heard from Mr. Nowak anything that they could possibly bring out of the hearing. Instead, we have this vague insinuation for him implying that there's some way to dirty up Mr. Martin. That's off the record. Well, we have the sentencing proceedings that give a pretty detailed view of Mr. Martin's life. I ask this Court to review those sentencing proceedings and see if it determines whether or not Mr. Martin, over 40 years old, is still the kind of person he was as a teenager and thus still warrants not having the full protection of constitutional rights today. Thank you.  Thank you. All right. This Court wants to thank counsel for a very good matter and we take it under advisement.  Thank you.